**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

```
Thomas & Thomas                )
Rodmakers, Inc., et al.,       )
                               )
            Plaintiffs,        ) Case No. 1:06-CV-421
                               )
      vs.                      )
                               )
Sharpe's, Inc., et al.,        )
                               )
                               )
            Defendants.        )
```

O R D E R

This matter is before the Court on motions to dismiss
filed by Defendant Governor and Bank of Scotland (Doc. No. 16),
Defendants Chris Langridge, Hugh Agnew, and David Mills (Doc. No.
18), and Defendant John Gerard Metcalfe (Doc. No. 19).  For the
reasons set forth below, the motions to dismiss of the Bank of
Scotland and Defendants Langridge, Agnew, and Mills are well-
taken and are **GRANTED**.  The claims against these Defendants are
**DISMISSED WITHOUT PREJUDICE.**  Defendant Metcalfe's motion to
dismiss is not well-taken and is **DENIED.**

I. Background

Plaintiff Thomas & Thomas Rodmakers, Inc. ("Thomas &
Thomas") is an Ohio corporation with its principal place of
business in Hamilton County, Ohio.  Complaint (Doc. No. 2) ¶ 1;
Notice of Removal (Doc. No. 1) ¶ .  Plaintiff Lon Deckard is a
citizen of the state of Ohio and the sole shareholder of Thomas &
Thomas.  Notice of Removal ¶ 6; Compliant ¶ 2.  Plaintiff L&L3,
LLC is a Massachusetts limited liability company whose members

are citizens of the state of Ohio.  Notice of Removal ¶ 7.

Defendant Sharpe's. Inc. ("Sharpe's") is a Delaware corporation

with its principal place of business in Massachusetts.  Id. ¶ 8.

Sharpe's is a wholly owned subsidiary of Defendant Sharpe's

Holdings, Ltd. ("Sharpe's Holdings") which is a corporation

organized under the laws of the United Kingdom.  Id. ¶ 9.  The

Bank of Scotland is a corporation constituted by an Act of

Parliament with its head office in Scotland. Id. ¶ 11.

Defendants Metcalfe, Langridge, and Mills are citizens of the

United Kingdom.  Id. ¶¶ 10, 12, 14.  Metcalfe is the majority

shareholder of Sharpe's Holding.  Complaint ¶ 6.  Defendant

Langridge is the managing director of Sharpe's Holdings, id. ¶ 8,

and Defendant Mills is a director of Sharpe's Holdings.  Id. ¶

10. Defendant Agnew is a citizen of Australia.  Notice of Removal

¶ 13; Complaint ¶ 9..

    The present lawsuit arises out of business dealings

among this international cast of players.  Thomas & Thomas is in

the business of manufacturing and selling fly fishing rods.

Complaint ¶ 12.  In August 2005, Thomas & Thomas entered into an

Asset Purchase Agreement with Sharpe's.  Complaint ¶ 13.  Under

this agreement, Sharpe's agreed to purchase all of the assets of

Thomas & Thomas, including its business and goodwill.  Id. ¶ 13.

Pursuant to the agreement, Sharpe's was to pay Thomas & Thomas

$100,000 at closing, another $200,000 three months after closing,

and then an additional sum for the inventory, estimated to be

approximately $480,000.  Id. ¶ 14.  Additionally, Sharpe's and

2

Metcalfe were supposed to sell 10% of the outstanding shares of Sharpe's Holdings to Thomas & Thomas, which in turn was going to allocate the shares to Plaintiff and his two children.  Id. ¶ 15.

In a separate and related agreement, Sharpe's agreed with L&L3 to temporarily lease and then purchase land on which Thomas & Thomas was located, and to continue to operate the business from that location pursuant to a lease or subsequent purchase.  Id. ¶ 16.

On or about August 24, 2005 the Agreement closed and Sharpe's made an initial payment of $120,174.39 to Thomas & Thomas.  Id. ¶ 21. Sharpes then began to operate the business from the same location.  Id.  Since that time, however, Sharpe's and Metcalfe have failed to fulfill the remaining terms of the Asset Purchase Agreement, including making the additional payments, delivering shares of stock, and purchasing the buildings and land owned by L&L3.  Id. ¶¶ 22-24.

The complaint further alleges that the Bank of Scotland assumed effective control of Sharpe's by, inter alia, appointing three board of directors of Sharpe's Holdings and by making day-to-day financial and operational decisions concerning Sharpe's.  Id. ¶ 25.  The complaint specifically alleges that the Bank of Scotland appointed Defendant Langridge to be managing director of Sharpe's Holdings and that he exercises decision-making authority over Sharpe's Holdings for the benefit of the Bank of Scotland.  Id. ¶ 26.

On May 31, 2006, Plaintiffs filed a complaint against the Defendants in the Hamilton County, Ohio Court of Common Pleas. Count One of the complaint asserts a claim for breach of the Asset Purchase Agreement against each of the Defendants. Count Two of the complaint asserts a claim for tortious interference with a business relationship against the Bank of Scotland. This claim alleges that the Bank of Scotland induced the other Defendants to breach the asset agreement between Sharpe's and Thomas & Thomas. Count Three of the complaint asserts a claim for fraud against Defendants Metcalfe, Sharpe's and Sharpe's Holdings. This claim alleges that the Defendants made material false representations upon which Plaintiffs relied in entering into the Asset Purchase Agreement. Finally, Count Four asserts a claim for breach of fiduciary duty against Defendants Langridge, Mills, and Agnew. This claim alleges that the Defendants have failed to operate Thomas & Thomas in the best interests of the corporation and the shareholders. The complaint seeks damages in excess of $100,000, an order directing delivery of stock certificates to Plaintiffs, and an award of attorney's fees and costs.

The Bank of Scotland removed the case from state court on July 3, 2006 pursuant to 28 U.S.C. §§ 1441 and 1446. The Court's subject matter jurisdiction is based on diversity of citizenship in that the parties are completely diverse and the amount in controversy is in excess of $75,000.

4

On July 12, 2006, the Court administratively closed the case as to Sharpe's Holdings, Doc. No. 11, based on the suggestion of bankruptcy filed by Defendants Langridge, Agnew, and Mills.  Doc. No. 10.  On July 31, 2006, the Court entered a default judgment against Sharpe's and awarded Plaintiffs damages totaling approximately $795,000.

Also on July 31, 2006, the remaining Defendants filed the instant motions to dismiss.  Each of the Defendants contend that personal jurisdiction is lacking because of insufficient contacts with the state of Ohio.  Additionally, each of the Defendants argues that Plaintiffs' service of process was insufficient.  The individual Defendants argue that the service of process was insufficient because Plaintiffs' failed to effect service in compliance with the requirements of the Hague Convention.  The Bank of Scotland apparently argues that service of process was insufficient because of failure to meet state service of process requirements which parallel the state requirements for application of the long arm statute.

In response, Plaintiffs apparently concede that there are jurisdictional defects with respect to Defendants Mills and Agnew because they now move the Court to voluntarily dismiss the claims against these individuals.  Plaintiffs, however, contend that service was properly effected on each of the other Defendants.  Finally, Plaintiffs argue that each of the Defendants is subject to personal jurisdiction in this district.

Alternatively, Plaintiffs move the Court to permit discovery on personal jurisdiction issues.

The Court will take up these issues seriatim.

## II. Service of Process

Because Plaintiffs commenced service of process prior to Defendants removal of the case to federal court, state law determines the validity of service. Cowen v. American Med. Sys., Inc., 411 F. Supp.2d 717, 720 (E.D.Mich. 2006). As this case originated in the Hamilton County Court of Common Pleas, Ohio law applies to the issues raised concerning service of process. After removal, however, any defects in service may be cured according to the Federal Rules of Civil Procedure. Id.

As indicated, the remaining Defendants in this case are citizens of the United Kingdom. The record indicates that, as to the Bank of Scotland, Leslee Deckard, a process server designated by the state court of common pleas, served the complaint on Lynden Scourfield, who is stated to be an agent for the Bank, on June 12, 2006. Doc. No. 21, at 15. Additionally, Defendant Langridge states that Leslee Deckard personally served him with the complaint in the United Kingdom on June 12, 2006. Doc. No. 17, at 13. Langridge, however, contends that service in this manner was ineffective under the Hague Convention because service was not perfected by the Central Authority and because Deckard is not a solicitor in the United Kingdom. Finally, Plaintiffs effected service on Metcalfe by express mail. Metcalfe admits in

6

his affidavit, Doc. No. 18, Ex. A ¶ 6, that he received a copy of the complaint at his home in the United Kingdom.

Compliance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, to which both the United States and the United Kingdom are signatories, is mandatory in all cases in which it applies. Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 705 (1988). Or, as the Court stated in Collins v. Collins, 844 N.E.2d 910 (Ohio Ct. App. 2006), the Hague Convention "preempts inconsistent methods of service of process prescribed by state law by virtue of the Supremacy Clause of Article VI of the United States Constitution." Id. at 913. Under the Hague Convention, each country must establish a "Central Authority" through which documents from foreign countries are served. Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004). The Hague Convention, however, also permits service to be made by any method of service permitted by the internal law of the country in which service is made. Paracelsus Healthcare Corp. v. Philips Med. Sys., Nederland, B.V., 384 F.3d 492, 496 (8th Cir. 2004). Therefore, in this case, since it seems apparent that Plaintiffs did not try to effect service through the Central Authority in the United Kingdom, service on the Defendants will be valid to the extent it comports with the law of the United Kingdom.

A. Defendant Metcalfe

The Court starts with Defendant Metcalfe since his case is the most easily resolved.  As indicated, Plaintiffs served Metcalfe by express mail and he admits that he received the complaint at home.  The Hague Convention permits service of documents by international mail if the country in which service is made does not object to service by mail.  Sibley v. Alcan, Inc., 400 F. Supp.2d 1051, 1053 (N.D. Ohio 2005).  The United Kingdom has not objected to the provisions of the Hague Convention that permit service by mail, see Judicial Assistance in the United Kingdom, available at http://travel.state.gov/law/ info/judicial/judicial_671.html (visited April 2, 2007), and the Civil Procedure Rules of the United Kingdom expressly permit service by mail.  See CPR 6.2(1)(b), available at http:// www.dca.gov.uk/civil/procrules_fin/contents/parts/part06.htm (visited April 2, 2007); see also Noirhomme v. Walklate, (1992) 1 Lloyd's Rep. 427, 430 (Q.B.)(also available at 1991 WL 839840). Therefore, the Court concludes that service of the complaint on Defendant Metcalfe complied with both the Hague Convention and the law of the United Kingdom.

Accordingly, Defendant Metcalfe's motion to dismiss on the grounds of improper service of process is not well-taken and is **DENIED.**

## B. Defendant Langridge

As indicated, Leslee Deckard personally served the complaint on Defendant Langridge in the United Kingdom.

8

Defendant argues that service by Deckard was not in compliance with the Hague Convention. Plaintiffs argue that service by Deckard was sufficient because English law allows personal service on a defendant. Plaintiffs' argument, however, misses the mark. Defendant's argument concerns who is authorized to effect service; Plaintiff's response addresses only the method of service. In other words, the issue raised by the Defendant is the "who" of service, not the "how" of service.

The general rule of practice in the United Kingdom is that the court serves documents unless a rule provides otherwise or the party on whose behalf the document is to be served notifies the court that he wishes to serve it himself. CPR 6.3 available at http://www.dca.gov.uk/civil/procrules_fin/contents/parts/part06.htm (visited April 2, 2007). However, as Defendant correctly points out, the English rules of practice contain more specific provisions where service of foreign process is concerned. Civil Practice Rules 6.32 through 6.35 concern the service of foreign process in England and Wales. In particular, Civil Procedure Rule 6.34 states that "process must be served as directed by the Senior Master." The Civil Procedure Rules also state that a "process server" is "a process server appointed by the Lord Chancellor to serve documents to which this Section [Service of Foreign Process] applies" or "his authorised agent." CPR 6.32(b). It is evident from reading these rules that the Senior Master is the United Kingdom's "Central Authority" pursuant to the Hague Convention. The rules on Service of

9

Foreign Process do not seem to specifically require the Senior
Master to employ a "process server", but they nevertheless imply
that that is the case.  For instance, Civil Procedure Rule 6.35
imposes duties on the process server to return proof of service
to the Senior Master or explain why service could not be
completed.

Despite the apparent requirement that the Senior Master
employ a process server to serve foreign documents, as the
discussion above with respect to Defendant Metcalfe indicates,
the Hague Convention does not mandate that documents be served
through the Central Authority.  The question, then, is whether
the United Kingdom requires personal service of foreign process
to be made by an authorized process server where the complainant
does not utilize the Senior Master.  A review of the Hague
Convention and a pertinent treatise on the Hague Convention
persuades the Court that personal service of foreign process in
the United Kingdom must be accomplished by a solicitor admitted
to practice in the United Kingdom.

At the time the United Kingdom ratified the Hague
Convention, it declared that service through official channels
would only be accepted by the Central Authority.  Practical
Handbook to the Operation of the Hague Service Convention 62
(2006).  A question then arose whether "the United Kingdom still
intended to allow direct service on its territory by a solicitor
admitted to practice in the jurisdiction."  Id.  In response, in
a letter to the Permanent Bureau of the Hague Conference on

International Private Law dated September 11, 1980, the Foreign
and Commonwealth Office to the Permanent Bureau stated in
pertinent part:

> Thank you for your letter of 31 July in which you ask
> for assistance in the interpretation of the declaration
> made by the United Kingdom on 17 November 1967 in
> relation to Article 10(c) of the Convention.
>
> I am happy to confirm that our declaration does not
> preclude any person in another Contracting State who is
> interested in a judicial proceeding (including his
> lawyer) from effecting service in the United Kingdom
> "directly" through a competent person other than a
> judicial officer or official, e.g., a solicitor.

See Declarations of the United Kingdom on the Hague Convention,
available at http://www.hcch.net/index_en.php?act=status.comment
&csid=427&disp=resdn (visited April 2, 2007)(emphasis added).
More recently, the Hague Convention reported that "the UK
confirmed its position expressed at the Special Commission
meeting of 1989, indicating its preference for the use of direct
service through English solicitors on residents of England and
Wales."  See Conclusions and Recommendations Adopted by the
Special Commission on the Practical Operation of the Hague
Apostille, Evidence and Service Conventions ¶ 58 (November 20,
2003), available at http://www.hcch.net/index_en.php?act=
publications.details&pid=3121&dtid=2 (visited April 2, 2007).

In light of the above authorities, it is evident to the
Court that pursuant to the United Kingdom's declarations
concerning the Hague Convention, personal service of foreign

11

process in the United Kingdom must be accomplished by a solicitor.  Since Plaintiffs have not demonstrated that Leslee Deckard is a solicitor admitted to practice in the United Kingdom, and indeed it seems evident that she is not, then Plaintiffs' service of the complaint on Defendant Langridge was contrary to the Hague Convention.  Therefore, service on Defendant Langridge was invalid and the complaint as to him should be dismissed without prejudice.

Plaintiffs cite Ohio Rule of Civil Procedure 3(A) for the proposition that the claims against Defendant Langridge should not be dismissed because they have one year to perfect service.  Plaintiffs' reliance on Rule 3(A) is misplaced.  Rule 3(A) states:

> **Commencement.** A civil action is commenced by filing a complaint with the court, if service is obtained within one year from such filing upon a named defendant, or upon an incorrectly named defendant whose name is later corrected pursuant to Civ.R. 15(C), or upon a defendant identified by a fictitious name whose name is later corrected pursuant to Civ.R. 15(D).

Ohio R. Civ. P. 3(A).  As the language of the rule indicates, the one year period therein concerns when an action is commenced for purposes of the statute of limitations.  See Seger v. For Women, Inc., No. C-040317, 2005 WL 323686, at *1-*2 (Ohio Ct. App. Feb. 11, 2005).  Ohio Rule 4(E) generally provides that service of the complaint must be made within six months of the filing of the complaint.  However, by its own terms, Rule 4.3 does not apply to service in a foreign county under Rule 4.5.  Ohio R. Civ. P. 4.3.

12

In turn, Ohio Rule 4.5 does not establish a time limit for service of the complaint in a foreign country.

In the absence of any time limitations on foreign service in the Ohio rules, the Court believes that the Hague Convention should control the issue.  Article 19 of the Hague Convention permits service of documents according to the internal laws of the contracting state.  See also Paracelus Healthcare, 384 F.3d at 496.  Therefore, the Court concludes the time limit for service of summons according to the law of the United Kingdom is applicable in this case.  Civil Procedure Rule 7.5 provides:

> (1) After a claim form has been issued, it must be served on the defendant.
> (2) The general rule is that a claim form must be served within 4 months after the date of issue.
>
> (3) The period for service is 6 months where the claim form is to be served out of the jurisdiction.

CPR 7.5 (available at http://www.dca.gov.uk/civil/procrules_fin/ contents/parts/part07.htm#4397081)(visited April 3, 2007).  Civil Procedure Rule 7.6 permits extensions of time in which to serve the claim form, but the application for an extension generally must be made within the time provided in Rule 7.5.  CPR 7.6(2) (available at http://www.dca.gov.uk/civil/procrules_fin/ contents/parts/part07.htm#4397081)(visited April 3, 2007).  The claimant may also obtain an extension at the end of the period specified by Rule 7.5, but then he must demonstrate that he acted promptly in making the application and that he was unable to serve the claim form or that he was unable to serve the claim

13

form but was unable despite taking reasonable steps to do so. CPR 7.6(3). Finally, an application for an extension to serve the claim form must be supported by evidence. CPR 7.6(4)(a). English courts require strict compliance with CPR 7.6 when a claimant seeks an extension to serve the claim form. <u>See generally</u> <u>Godwin v. Swindon Borough Council</u>, [2001] EWCA(Civ) 1478 [50] (also available at 2001 WL 1135130); <u>Anderton v. Clwyd County Council</u>, [2002] EWCA(Civ) 933 [6]-[7], [24], [47]-[49] (also available at 2002 WL 1310828).

In this case, Plaintiffs have not served the complaint on Defendant Langridge in compliance with the laws of the United Kingdom because they failed to engage a solicitor to serve process. Moreover, it is evident from the record that Plaintiffs failed to properly serve the complaint on Defendant Langridge within six months of the filing of the complaint, which is the outside limit for service according to CPR 7.5. Plaintiffs failed to request an extension of time to serve the complaint within time period allowed by CPR 7.5. Other than the fact that they apparently have misconstrued the Hague Convention as it applies to service of process in the United Kingdom, Plaintiffs have not offered any reason that they could not comply with the service requirements established in CPR 7.5. Therefore, there are no grounds under CPR 7.6(3) to grant Plaintiffs an extension of time to properly serve the complaint on Langridge.

In their memorandum in opposition, Plaintiffs state that they do not have to comply with the Hague Convention. This

14

argument is obviously incorrect.  As indicated above, Article 19 of the Hague Convention essentially incorporates by reference the internal law of the contracting state.  Moreover, <u>Schlunk</u> establishes that the Hague Convention is the supreme law of the land where it applies.  Thus, where a litigant opts not to serve papers through the Central Authority, he violates the Hague Convention to the extent that he otherwise fails to serve papers according to the laws of the receiving country.

In summary, for the reasons stated, the Court finds that Plaintiffs failed to comply with the Hague Convention in serving the complaint on Defendant Langridge.  Accordingly, Defendant Langridge's motion to dismiss the complaint is well-taken and is **GRANTED.**  The complaint as to Defendant Langridge is **DISMISSED WITHOUT PREJUDICE.**

## C. <u>The Bank of Scotland</u>

The Bank of Scotland also moves to dismiss the complaint on the grounds of improper service.  However, as Plaintiffs correctly argue, the Bank fails to state in what manner service was insufficient.  The Bank does cite Ohio Rule of Civil Procedure 4.3, which describes when service is permitted on out-of-state defendants.[1]  Rule 4.3 generally tracks the language

---

[1]     Ohio Rule 4.3 provides:

**A) When service permitted.** Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state or is a resident of this state who is absent from this state. "Person" includes an individual, an individual's executor, administrator, or other personal

15

representative, or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state, including, but not limited to, actions arising out of the ownership, operation, or use of a motor vehicle or aircraft in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when the person to be served might reasonably have expected the person who was injured to use, consume, or be affected by the goods in this state, provided that the person to be served also regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Having an interest in, using, or possessing real property in this state;

(7) Contracting to insure any person, property, or risk located within this state at the time of contracting;

(8) Living in the marital relationship within this state notwithstanding subsequent departure from this state, as to all obligations arising for spousal support, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in this state;

(9) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person to be served might reasonably have expected that some person would be injured by the act in this state;

(10) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, that the person to be served commits or in the commission of which the person to be served is guilty of complicity.

16

of Ohio's long-arm statute concerning the assertion of personal jurisdiction over out-of-state defendants.  The Court, therefore, concludes that the Bank of Scotland is arguing that service of the complaint was improper because the Court does not have personal jurisdiction over it.  Accordingly, the Court finds that the Bank of Scotland's motion to dismiss on the grounds of insufficiency of process is either moot or subsumed in its jurisdictional motion.  The Court addresses the jurisdictional issues, <u>infra</u>.

### III. <u>Personal Jurisdiction</u>

Finally, Defendants Metcalfe and Bank of Scotland contend that they are not subject to the personal jurisdiction of this Court.  The Bank of Scotland argues that it does not meet any of the criteria under Ohio's long arm statute, Ohio Rev. Code § 2307.382, for assertion of personal jurisdiction.  Furthermore, the Bank argues, its contacts with Ohio are insufficient to satisfy the Due Process Clause.  Defendant Metcalfe advances the same arguments.

In a diversity case, the district court applies the law of the forum state, subject to the limitations of the Due Process Clause of the Constitution.  <u>Cole v. Mileti</u>, 133 F.3d 433, 436 (6th Cir. 1998).  The district court must determine whether the defendant is subject to jurisdiction pursuant to the forum

---

Ohio R. Civ. P. 4.3.

state's long arm statute and, if so, whether the defendant's contacts with the state are sufficient so that "traditional notions of fair play and substantial justice" are not offended. Calphalon v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000).

When presented with a motion to dismiss for lack of jurisdiction over the person, the court may determine the motion on the basis of affidavits alone, it may permit discovery in aid of the motion, or it may conduct an evidentiary hearing on the merits of the motion. Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989). However the court handles the motion, the plaintiff always bears the burden of establishing that jurisdiction exists. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Weller v. Cromwell Oil Co., 504 F.2d 927, 929 (6th Cir. 1974). The plaintiff's burden of proof, however, depends on whether the trial court chooses to rule on written submissions or to hear evidence on the personal jurisdiction issue. If the court rules on written submissions alone, the plaintiff may not rest on his pleadings to answer the movant's affidavits, but must set forth, by affidavit or otherwise specific facts which demonstrate that the court has jurisdiction. Id. at 930. When the trial court has determined that the motion to dismiss for lack of personal jurisdiction can be decided upon written submissions, it must consider the pleadings and affidavits in the light most favorable to the plaintiff. Welsh v. Gibbs, 631 F.2d 436, 439 (6th Cir. 1980). If the court does not hold an evidentiary hearing, the plaintiff

18

is only required to make a prima facie showing that personal jurisdiction exists.  Id. at 438.  In this case, the Court will not hold an evidentiary hearing on the issue of personal jurisdiction.  Therefore, Plaintiffs only need to make a prima facie showing that the Court has personal jurisdiction over the Defendants.

An out-of-state defendant is subject to personal jurisdiction under Ohio law by:

   (1) Transacting any business in this state;

   (2) Contracting to supply services or goods in this
       state;

   (3) Causing tortious injury by an act or omission in
       this state;

   (4) Causing tortious injury in this state by an act or
       omission outside this state if he regularly does or
       solicits business, or engages in any other
       persistent course of conduct, or derives
       substantial revenue from goods used or consumed or
       services rendered in this state;

   (5) Causing injury in this state to any person by
       breach of warranty expressly or impliedly made in
       the sale of goods outside this state when he might
       reasonably have expected such person to use,
       consume, or be affected by the goods in this state,
       provided that he also regularly does or solicits
       business, or engages in any other persistent course
       of conduct, or derives substantial revenue from
       goods used or consumed or services rendered in this
       state;

   (6) Causing tortious injury in this state to any person
       by an act outside this state committed with the
       purpose of injuring persons, when he might
       reasonably have expected that some person would be
       injured thereby in this state;

   (7) Causing tortious injury to any person by a criminal
       act, any element of which takes place in this

19

state, which he commits or in the commission of
which he is guilty of complicity.

    (8) Having an interest in, using, or possessing real
        property in this state;

    (9) Contracting to insure any person, property, or risk
        located within this state at the time of contracting.

Ohio Rev. Code § 2307.382.

### A. <u>Defendant Metcalfe</u>

In this case, the record easily establishes that
Defendant Metcalfe is subject to personal jurisdiction in this
district. In support of the assertion of personal jurisdiction,
Plaintiffs have submitted a voluminous amount of email
correspondence between Defendant Metcalfe in the United Kingdom
and Plaintiff Deckard and Deckard's accountant, Steve Whitmer, in
Ohio. Doc. No. 20, Exs. 2-4. This correspondence reflects
approximately a four year course of negotiations between Metcalfe
and Deckard concerning a possible merger or acquisition of Thomas
& Thomas by Sharpe's, Inc. As the complaint indicates, these
negotiations culminated in the Asset Purchase Agreement between
Sharpe's and Thomas & Thomas. This activity is sufficient to
constitute "transacting any business" for purposes of Ohio's
long-arm statute. <u>Kentucky Oaks Mall Co. v. Mitchell's Formal
Wear, Inc.</u>, 559 N.E.2d 477, 480 (Ohio 1990).

Finally, this activity is sufficient to properly
establish the assertion of specific jurisdiction over Metcalfe
pursuant to the Due Process Clause:

        If, as here, a nonresident defendant transacts business
        by negotiating and executing a contract via telephone
        calls and letters to an Ohio resident, then the

20

> defendant has purposefully availed himself of the forum
> by creating a continuing obligation in Ohio.
> Furthermore, if the cause of action is for breach of
> that contract, as it is here, then the cause of action
> naturally arises from the defendant's activities in
> Ohio. Finally, when we find that a defendant like
> Mileti purposefully availed himself of the forum and
> that the cause of action arose directly from that
> contact, we presume the specific assertion of personal
> jurisdiction was proper. In light of this precedent, we
> have no doubt that the Magistrate's assertion of
> jurisdiction over Mileti was fundamentally fair and
> constitutional.

Cole, 133 F.3d at 436 (internal case citations omitted). This
case is similar to Cole in almost all important respects. The
Court, therefore, concludes that Plaintiffs have made a prima
facie showing that Defendant Metcalfe is subject to personal
jurisdiction in this district.

Accordingly, Defendant Metcalfe's motion to dismiss is
not well-taken and is **DENIED.**

### B. The Bank of Scotland

The record, however, does not establish a prima facie
case that the Bank of Scotland is subject to personal
jurisdiction in this district. Assuming for present purposes
that the one of the requirements of Ohio's long-arm statute is
satisfied, Plaintiffs have not established that the Bank has
sufficient contacts with the state of Ohio to satisfy the Due
Process Clause.

Plaintiffs' primary submission on this issue is a
screen shot from the Bank of Scotland's website which states that
the Bank has North American offices in New York, Boston, Chicago,

21

Los Angeles, Seattle, Houston, and Minneapolis.  Doc. No. 21, at
14.  Plaintiffs theorize that because of these contacts with
North America, the Bank of Scotland may provide extensive
corporate finance services in Ohio. Plaintiffs argue that this
evidence is sufficient to allow discovery on personal
jurisdiction.  The Court agrees with the Bank of Scotland,
however, that Plaintiffs are merely speculating that the Bank
does any business in Ohio.  The screen shot provided by
Plaintiffs is not probative on whether the Bank of Scotland has
any contacts with Ohio.

        Additionally, the Court finds that this evidence is
insufficient to permit discovery on the Bank of Scotland's
contacts with Ohio.  In a recent case the Court permitted
discovery on personal jurisdiction where the record did not
establish a prima facie case of personal jurisdiction.  See
Bradford Co. v. Afco Mfg. Co., Case No. 1:05-CV-449 (S.D. Ohio)
(Doc. No. 28).  In Bradford, however, in response to the motion
to dismiss, the plaintiff was able to present some evidence that
the defendant actually had contacts with the state of Ohio.  For
example, the plaintiff established that the defendant had a
distributorship agreement with another Ohio corporation which
contained an Ohio choice of law clause.  In an unrelated
licensing agreement, the defendant agreed to arbitrate disputes
in Ohio.  Finally, the defendant admitted that it "nominally" did
business in Ohio.  See id. at 4.  Under those circumstances, the
Court concluded that plaintiff had produced enough evidence to

warrant further discovery on personal jurisdiction. Id. at 5. There was some basis for the Court to conclude that further discovery on personal jurisdiction might be fruitful.

In contrast, in this case, Plaintiffs have not produced any evidence which rebuts the affidavits from the Bank of Scotland which state that the Bank has no contacts whatsoever with the state of Ohio. Doc. No. 16, Exs. 1 & 2. Plaintiffs have not adduced any evidence from which the Court can conclude that more discovery is reasonably likely to lead to information which tends to establish that the Bank of Scotland has contacts with Ohio. Plaintiffs' request for discovery from the Bank of Scotland amounts to no more than an application for a fishing license. The request for discovery, therefore will be denied.

Finally, Plaintiffs rely on Defendant Langridge's contacts with Ohio under the theory that Langridge was an agent for the Bank of Scotland. Therefore, Plaintiffs contend, Langridge's contacts with Ohio are attributable to the Bank of Scotland. As the Bank of Scotland correctly observes, however, Plaintiffs' own evidence refutes their theory. The documentation submitted by Plaintiffs shows that Defendant Metcalfe selected Langridge to operate Sharpe's Holdings, not the Bank of Scotland See Doc. No. 20, Ex. 4, at 28. Therefore, Plaintiffs' agency theory fails at the outset.

In summary, for the reasons stated, the Court finds that Plaintiffs have failed to establish a prima facie case that

23

the Court has personal jurisdiction over the Bank of Scotland. Moreover, allowing further discovery on this issue is not warranted.  Accordingly, the Bank of Scotland's motion to dismiss is well-taken and is **GRANTED**.  The complaint as to the Bank of Scotland is **DISMISSED WITHOUT PREJUDICE.**

Conclusion

For the reasons stated, the Bank of Scotland's motion to dismiss for lack of jurisdiction over the person (Doc. No. 16) is well-taken and is **GRANTED**.  The complaint as to the Bank of Scotland is **DISMISSED WITHOUT PREJUDICE.**  The motion to dismiss filed by Defendants Langridge, Agnew and Mills (Doc. No. 17) is well-taken and is **GRANTED**.  As to Defendant Langridge, the motion is granted for failure to perfect service in accordance with the Hague Convention and the laws of the United Kingdom.  Defendants Agnew and Mills are dismissed without opposition from Plaintiffs. The complaint as to these Defendants is **DISMISSED WITHOUT PREJUDICE.**  Defendant Metcalfe's motion to dismiss (Doc. No. 18) is not well-taken and is **DENIED.**

**IT IS SO ORDERED.**

Date April 5, 2007            s/Sandra S. Beckwith
                         Sandra S. Beckwith, Chief Judge
                          United States District Court